Paul Gallardo
Daniel Flaherty
FLAHERTY GALLARDO LAWYERS
1026 1ST Ave. S.,
P.O. Box 1968
Great Falls, Montana 59403
Telephone: (406) 727-8494
Facsimile:  (406) 727-8537
paul@greatfallsfirm.com
        Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### GREAT FALLS DIVISION

| | |
|---|---|
| ESTATE OF WILLY WAYNE ANDRE PEPION, | **Case No. CV-22-41-GF-BMM** |
| Plaintiff, | |
| vs. | **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO AMEND COMPLAINT, OR IN THE ALTERNATIVE, TO PERMIT EMTALA CLAIM** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

COMES NOW, Plaintiff, by and through counsel of record, and respectfully requests the court to issue an Order allowing Plaintiff to amend the complaint to include a specific claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), or in the alternative, to permit the claim under the current complaint.

The Plaintiff is attaching a draft Amended Complaint for the Court's review. (Exhibit 1).

## I. Background Facts

Plaintiff filed an Administrative Claim for relief with appropriate Federal Agencies in a timely manner under the Federal Tort Claims Act, 28 U.S.C § 2675(a) on July 26, 2021, (Exhibit 2) which was confirmed in a July 27, 2021 letter by the Defendant. (Exhibit 3). In the administrative claim, Plaintiff alleged, among other things, that a physician who medically cleared Mr. Pepion to go to jail on May 10, 2020, was negligent in his duties. This physician would later be identified as Dr. Jose Ortiz. On August 25, 2021, the United States Department of the Interior acknowledged that the administrative claim was also alleging that the Indian Health Services physician(s) who treated Mr. Pepion were negligent in their medical care. (Exhibit 4). The Department stated that, pursuant to 28. C.F.R. § 14.2, it was coordinating the determination  of that claim with the U.S. Department of Health and Human Services. The letter stated that the Department of the Interior was the designated lead agency and are providing Plaintiff notification under that regulatory section. In a January 31, 2022, letter, the Department of the Interior stated that it denied the administrative tort claim.

Plaintiff filed the Complaint in this matter on April 29, 2022. (Doc. 1).

In the Complaint, Plaintiff made various claims of negligence against the

BIA, IHS, and the Detention Center. Count II alleges medical negligence as

follows:

> 20.    Defendant, by and through its employee physician and other health care providers, had a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of health care providers. The Defendant violated accepted standards of care that govern the proper procedures and practices for clearing an inmate to be detained in a detention facility. Defendant was negligent in performing Plaintiff's health screening, failed to perform and review diagnostic testing, failed to perform additional checks and testing on Plaintiff, and failed to properly advise Blackfeet Law Enforcement of Plaintiff's condition and to provide adequate warning and instructions.

> 21.    Defendant breached its duty of care to Plaintiff, causing the damages set forth in this Complaint.

(Doc. 1, ¶¶ 20-21)

In Count IV, Plaintiff brought claims of vicarious liability, respondeat

superior, and ostensible agency. In Count IV, Plaintiff alleged that "[t]he

directors, officers, operators, administrators, employees, agents, and staff

negligently or recklessly directly and proximately caused personal injury to

Plaintiff, including both acts of omission and acts of commission." (Doc. 1, ¶

27). Plaintiff alleged that, as a direct and proximate result of Defendant's

negligence, Plaintiff suffered the damages set forth in this Complaint. (Doc.

1, ¶ 28), and that the acts and omissions set forth in the complaint would "constitute a claim under the laws of the State of Montana" and that Defendant is liable under 28 U.S.C. 1346(b)(1). (Doc 1, ¶¶ 29-30).

In August 24, 2022, Defense Counsel advised Plaintiff's Counsel that, in preparing for initial disclosures in this case and becoming acquainted with the facts at issue in another case, Defendant learned that Dr. Ortiz is not employed by the IHS facility in Browning, but rather an independent contractor. (Exhibit 5). Plaintiff later inquired into Dr. Ortiz's employment status with IHS as of May 10, 2020, in discovery. Defendant answered these discovery requests on November 4, 2022, denying that Dr. Ortiz was an "employee" of IHS on May 10, 2020, and further provided discovery productions supporting that Dr. Ortiz was, indeed, classified as an "independent contractor."

For purposes of the Federal Tort Claims Act, the definition of "government employee," includes officers and employees of federal agencies, but specifically excludes "any contractor with the United States." 28 U.S.C. § 2671. Thus, the independent contractor exception to the FTCA often bars federal government liability and denies FTCA "protection" to the defendant party. *U.S. v. Orleans*, 425 U.S. 807, 813-14 (1976).

The deadline to amend pleadings in this case was October 14, 2022. The deadline to disclose liability experts, and Plaintiff's damage experts, was March 17, 2023. (Doc. 16). The parties have made these disclosures.

In March 2023, as Plaintiff's counsel was working with medical expert Dr. Huffman, Plaintiff was informed of possible EMTALA violations under 42 U.S.C. § 1395dd. By way of background on EMTALA claims, Congress enacted EMTALA to ensure that individuals, regardless of their ability to pay, receive adequate emergency medical care. Jackson v. E. Bay Hosp., 246 F.3d 1248, 1254 (9th Cir.2001). If an individual seeks emergency care from a hospital with an emergency room and if that hospital participates in the Medicare program, then "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a); *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1255 -56 (9th Cir.1995). In Plaintiff's expert disclosures, Dr. Huffman opined that Defendant violated EMTALA, among other standards of care. (Exhibit 6).

Plaintiff's Complaint alleged that the Defendant was negligent in performing Plaintiff's health screening, failed to perform and review diagnostic testing, and failed to perform additional duties. While the

Complaint references that these violations constitutes claims under

Montana law, neither the Complaint nor Plaintiff's discovery responses

specifically reference "EMTALA" claims.

## II. Applicable Law

The trial court's denial of a motion to amend a complaint is reviewed

for an abuse of discretion.  See *Perez v. Mortg. Elec. Registration Sys., Inc.*,

959 F.3d 334, 340 (9th Cir. 2020); *V.V.V. & Sons Edible Oils Ltd. v.*

*Meenakshi Overseas, LLC*, 946 F.3d 542, 545 (9th Cir. 2019). A district

court acts within its discretion to deny leave to amend when amendment

would be futile, when it would cause undue prejudice to the defendant, or

when it is sought in bad faith.  *V.V.V. & Sons Edible Oils Ltd*., 946 F.3d at

545;

In situations where the deadline for amendments to pleadings has

passed, a party must meet the more stringent requirement of Rule 16(b),

which requires a showing of good cause for amending the scheduling order

to allow the filing of an amended pleading. Fed.R.Civ.P. 16(b)(4) ("[a]

schedule may only be modified for good cause and with the judge's

consent"); *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1294 (9th Cir.

2000). In *Johnson v. Mammoth Recreations*, Inc., 975 F.2d 604, 609 (9th

Cir. 1992), the Ninth Circuit explained that "[u]nlike Rule 15(a)'s liberal

amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Good cause to modify the scheduling order exists if the pretrial deadlines "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d. at 609 (quoting Fed.R.Civ.P. 16 Advisory Committee's Notes (1983 Amendment)).

Prejudice to the opposing party may provide an additional reason to deny a motion to amend, but "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d. at 609. "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d. at 609. ; see also *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716, 737 (9th Cir. 2013) (upholding denial of motion to amend where "the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action.").

If good cause exists for seeking amendment after the scheduling order's deadline, the Court then turns to Rule 15(a) to determine whether amendment should be allowed. The Ninth Circuit has liberally applied Rule 15's instruction that leave to amend "shall be freely given when justice so

requires." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (quoting Fed.R.Civ.P. 15(a)). Nevertheless, "the liberality in granting leave to amend is subject to several limitations." *Ascon*, 866 F.2d at 1160. Under Rule 15(a), the Ninth Circuit instructs courts to consider the following five factors in assessing whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Ascon*, 866 F.2d at 1160. These factors do not merit equal weight. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### III.   Argument

The Plaintiff submits that good cause exists to allow the EMTALA claim to proceed. The deadline for amendments has passed, but the parties are still conducting discovery.  The Plaintiff was not informed until over a year after filing the administrative tort claim that Defendant did not believe that Dr. Ortiz was not an employee. This was not formally confirmed until November 2022 through discovery. Had the Plaintiff been advised that Dr. Ortiz was not technically an "employee" of the IHS hospital earlier, Plaintiff likely would have approached the medical negligence theories differently.

The Plaintiff's team has been working with experts on this case and recently learned of the specific legal theory most applicable to the Defendant in this case, given Dr. Ortiz' status. Plaintiff is now attempting to revise the legal theories aimed at the Defendant.

The Defendant would not be prejudiced by permitting the EMTALA claim. Plaintiff specifically pled in the Complaint that "Defendant was negligent in performing Plaintiff's health screening, failed to perform and review diagnostic testing, failed to perform additional checks and testing on Plaintiff, and failed to properly advise Blackfeet Law Enforcement of Plaintiff's condition and to provide adequate warning and instructions." (Doc. 1, ¶¶ 20-21). Plaintiff identified the underlying acts and omissions constituting medical negligence in Count II. While the specific EMTALA theory was not contained in the Complaint, the conduct underlying the EMTALA claim is contained in the complaint and discovery responses. Moreover, the Defendant has not attempted to dismiss medical negligence claims lodged against it.

## IV. Conclusion

Good cause exists to permit Plaintiff's to proceed with EMTALA claims against the Defendant. The Defendant has been apprised of the alleged negligent acts concerning its medical screening of Mr. Pepion since

the outset of this claim. The Defendant did not advise Plaintiff of Dr. Ortiz'

status as an independent contractor until later in the case. The Plaintiff is

relying on experts in this case and now seeks some grace in permitting the

EMTALA claim to go forward.

RESPECTFULLY SUBMITTED this 10th day of April, 2023.


/s/ Paul Gallardo
Paul Gallardo
Attorney for Plaintiff

## CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on April 10, 2023, a copy of the foregoing document was served on the following persons by the following means:

 1,2   CM-ECF
_____ Hand Delivery
_____ Mail
_____ Overnight Delivery Service
_____ Fax
_____ E-Mail

1.    CLERK, UNITED STATES DISTRICT COURT

2.    MARK STEGER SMITH
      Assistant United States Attorney
      United States Attorney's Office
      2601 Second Ave. N., Suite 3200
      Billings, MT 59101

      ABBIE J.N. CZIOK
      Assistant United States Attorney
      United States Attorney's Office
      901 Front Street, Suite 1100
      Helena, MT 59626
            Counsel for the United States of America


                        /s/ Paul Gallardo
                        Attorney for Plaintiff