Daniel Flaherty
Paul Gallardo
FLAHERTY GALLARDO LAWYERS
1026 1ST Ave. S.,
P.O. Box 1968
Great Falls, Montana 59403
Telephone: (406) 727-8494
Facsimile:  (406) 727-8537
paul@greatfallsfirm.com
     Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# GREAT FALLS DIVISION

| | |
|---|---|
| ESTATE OF WILLY WAYNE-ANDRE PEPION,<br><br>     Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | **Case No. CV-22- _____**<br><br>**COMPLAINT** |

COMES NOW, Plaintiff, Wilma Ann Fleury, as Personal Representative of the Estate of Willy Pepion, and for his claims for relief against the Defendant, United States of America, say that:

**JURISDICTION AND VENUE**

1.    This matter arises under the Federal Tort Claims Act, (28 U.S.C. §

2671, et. seq) and a claim under 42.U.S.C. § 1983. This Court is vested with jurisdiction in accordance with 28 U.S.C. § 1346(b).

2. Venue is proper under 28 U.S.C. § 1402(b) because the alleged the Plaintiff resides in and the negligence occurred within the boundaries of the United States District Court, District of Montana, Great Falls Division.

3. Plaintiff filed an Administrative Claim for relief with appropriate Federal Agencies in a timely manner under the Federal Tort Claims Act, 28 U.S.C § 2675(a) on July 26, 2021. On August 25, 2021, the United States Department of the Interior denied, the administrative tort claim.

**PARTIES**

4. Willy Pepion ("Plaintiff") at the time of the commencement of this action and at all times pertinent, was a citizen of the State of Montana and resident of the State of Montana.

5. The Defendant United States of America ("United States"), is the proper party for the Blackfeet Detention Center ("Detention Center") and the Indian Health Services ("IHS") on the Blackfeet Reservation in Browning, Montana. The Detention Center and IHS are operated by the Blackfeet Tribe under a P.L. 93-638 contract.

6. At all times relevant to this Complaint, tribal officials, officers, operators, administrators, employees, agents, physicians, and staff of the

Detention Center and IHS were employed by and/or acting on behalf of Defendant. Further, Defendant is responsible for the negligent acts of its employees and agents under respondeat superior.

7. This is a claim of negligence against the United States through the BIA, IHS, and Detention Center, and other who were employed by and acting within the scope and course of their employment at the time of the acts, errors and omissions contained in this complaint.

## FACTUAL ALLEGATIONS

8. On or prior to May 10, 2020, Willy Pepion suffered some form of blunt force trauma to his head.

9. On or around May 10, 2020, Willy Pepion was involved in some form of altercation with other individuals on the Blackfeet Reservation in Montana. Blackfeet law enforcement personnel responded to this altercation and observed that Pepion appeared acutely intoxicated and bleeding from his nose and mouth. Blackfeet Law Enforcement arrested Pepion and transported him to the Browning IHS, where a physician examined Pepion and cleared him at 6:30 a.m. When this health screening occurred, Pepion had a cracked skull due to blunt force injury and suffering from subdural hematoma. He was also slurring his voice and appeared to be cognitively impaired.

10. Law enforcement then transported Pepion to the Blackfeet Detention Center and placed in the "drunk tank" where he was supposedly free to leave once he sobered up.

11. While at the Detention Center, Mr. Pepion complained of his head hurting. He asked, or told, the jail guards to take him back to the hospital. Other inmates reported that Pepion was moaning and curled up in the fetal position, not letting his head touch the mat, and crying.

12. Due to Defendant's negligence, Mr. Pepion's calls and attempts went unanswered and adequate care was not provided. Plaintiff passed away shortly thereafter.

13. The Blackfeet officers, detention staff, medical responders/providers who are deemed to be employees of the Bureau of Indian Affairs were negligent in the health screening of Pepion and their supervision and care of the inmate. Mr. Pepion was deprived of his constitutional right to be free from cruel and unusual punishment. Mr. Pepion's constitutional right to effective medical treatment was also violated.

14. At all times relevant to this complaint, the tribal officials, officers, operators, administrators, employees, agents, and staff of the Detention Center operated under a P.L. 93-638 contract.

15. Defendant is liable for damages under wrongful death and

survivorship claims.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

16.     Plaintiff realleges and reincorporates each and every allegations above as if fully set forth herein.

17.     Defendant unlawfully and negligently failed to exercise due care for the safety and care of Plaintiff.

18.     Defendant breached its duty of care to Plaintiff, causing the damages set forth in this Complaint.

## COUNT II – MEDICAL NEGLIGENCE

19.     Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

20.     Defendant, by and through its employee physician and other health care providers, had a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of health care providers. The Defendant violated accepted standards of care that govern the proper procedures and practices for clearing an inmate to be detained in a detention facility. Defendant was negligent in performing Plaintiff's health screening, failed to perform and review diagnostic testing, failed to perform additional checks and testing on Plaintiff, and failed to properly advise

Blackfeet Law Enforcement of Plaintiff's condition and to provide adequate warning and instructions.

21. Defendant breached its duty of care to Plaintiff, causing the damages set forth in this Complaint.

## COUNT III – NEGLIGENT HIRING, TRAINING, AND SUPERVISION

22. Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

23. On information and belief, Plaintiff asserts that Defendant's failure to properly hire, train, supervise, and appropriately manage its employees and agents constitutes negligence. This negligence contributed to Plaintiff's harm.

## COUNT IV - VICARIOUS LIABILITY, RESPONDEAT SUPERIOR, OSTENSIBLE AGENCY AND/OR AGENCY

24. Plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

25. At all times relevant to this case, the directors, officers, operators, administrators, employees, agents, staff were employed by and/or acting on behalf of the Defendant.

26. At all relevant times to this Complaint, the directors, officers,

operators, administrators, employees, agents, and staff acted within their respective capacities and scopes of employment for the Defendant.

27. The directors, officers, operators, administrators, employees, agents, and staff negligently or recklessly directly and proximately caused personal injury to Plaintiff, including both acts of omission and acts of commission.

28. As a direct and proximate result of Defendant's negligence, Plaintiff suffered the damages set forth in this Complaint.

29. The acts and omissions set forth above would constitute a claim under the laws of the State of Montana.

30. The Defendant is liable under 28 U.S.C. 1346(b)(1).

## COUNT V – WRONGFUL DEATH

31  Plaintiff restates and realleges each and every allegation contained in the preceding Paragraphs as though fully set forth herein.

32. The Defendant was negligent as alleged above.

33. This negligence caused the death of Plaintiff.

34. Defendant is responsible for all damages stemming from their negligence as provided under Montana law.

## COUNT VI – SURVIVORSHIP ACTION PURSUANT TO § 27-1-501 MCA

35. Plaintiffs restate and reallege each and every allegation contained

above as though fully set forth herein.

36. Defendant was negligent as set forth in the above paragraphs. The negligence was the legal cause of serious physical harm, emotional harm, and mental anguish to Plaintiff.

37. Plaintiff lived for an appreciable period of time sufficient to suffer physical pain and mental anguish and serious emotional distress.

38. As a result, Plaintiff suffered compensatory damages. The Estate of Willy Pepion is entitled to judgment for all such compensatory damages allowed by Montana Law.

## COUNT VII – EMTALA CLAIM

39. Plaintiffs restate and reallege each and every allegation contained above as though fully set forth herein.

40. EMTALA imposes two primary obligations on hospitals that participate in the Medicare program and operate an emergency department: (1) to conduct an "appropriate medical screening examination" on an individual is suffering from an "emergency medical condition"; and (2) if the hospital determines that the individual has such a condition, to "stabilize" the condition before transferring him or her elsewhere. *See* 42 U.S.C. § 1395dd(a), (b)(1)(A), (e)(2),

41. The duties imposed by EMTALA can only be carried out by physicians

and other medical personnel in some way affiliated with the hospital. The hospital. The hospital is responsible for the actions of these individuals, regardless of whether they are independent contractors or whether the hospital is subject to respondeat superior liability for their conduct under state law. In other words, independent-contractor physicians and other nonemployees responsible for EMTALA compliance are agents of the hospital for purposes of EMTALA, and any EMTALA violation by such an individual is a violation by the hospital.

42. Under EMTALA, the hospital is charged with the knowledge of all of its physicians and other personnel.

43. The Indian Health Services in Browning, Montana is covered under EMTALA.

44. Physicians at the Browning IHS, whether employees or independent contractors, were responsible for complying with EMTALA.

45. Although Dr. Ortiz allegedly medically cleared Mr. Pepion to go to jail, Dr. Ortiz's examination was so paltry as to amount to no screening at all.

46. Defendant failed to follow standard screening procedures with respect to Pepion.

47. Alternatively, Defendant's screening procedures were so cursory that

they were not designed to identify acute or severe systems that alert physicians of the need for immediate medical attention, or to alert jail staff of warning signs or symptoms regarding Pepion.

48. Defendant's violation of its duty to provide an appropriate medical screening was a direct cause of Pepion's injuries and death.

WHEREFORE, Plaintiff respectfully requests the following relief:

1. For such damages as a proven at trial;
2. For attorney's fees and costs; and
3. For other relief the Court deems appropriate.

RESPECTFULLY SUBMITTED this 10th day of May, 2022.

FLAHERTY GALLARDO LAW OFFICE

/s/ Paul Gallardo
Attorney for Plaintiff